## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| SUSAN LAWSON, individually and on behalf of all others similarly situated, | Civil Action No. 1:21-cv-770 |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GERBER PRODUCTS COMPANY, | |
| *Defendant*. | |

Plaintiff Susan Lawson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Gerber Products Company ("Gerber" or "Defendant") and alleges the following based upon personal knowledge, as well as the investigation of her counsel.

### INTRODUCTION

1.      Gerber sold purportedly "organic," "natural," and "non-GMO" baby food that, in fact, contained harmful levels of certain heavy metals, including arsenic, mercury, cadmium, and lead. Among the baby food products Gerber sells at a premium are puffs, rice cereals, teethers, purees, snacks, and meals (collectively, the "Tainted Baby Foods" or "Products").[1] As a recent congressional report from the Subcommittee on Economic and Consumer Policy found, Gerber's baby food products contain significant levels of toxic heavy metals, which can endanger infant neurological development.

2.      Not knowing that Gerber baby food—billed as "organic", "natural," and "non-GMO"—contained these harmful ingredients, Plaintiff bought Gerber foods to feed to her young

---

[1]   This is not an exhaustive list of the Tainted Baby Foods, but merely a representative sample.

children. If Plaintiff had known that the Gerber baby foods contained these dangerous ingredients, she would not have purchased Gerber baby foods for her infant children. Because Defendant misrepresented the true nature of the ingredients in its Tainted Baby Foods when it failed to disclose the presence or risk of dangerous levels of heavy metals, Plaintiff brings this action, individually and on behalf of all others similarly situated, against Gerber for breach of express and implied warranties, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, unjust enrichment, and violation of states' consumer protection laws.

3.      To stop the sale of Gerber baby foods containing dangerous heavy metals to unwitting parents buying food for their babies, Plaintiff seeks an injunction requiring that Defendant stop the sale of its products with these metals and instead test its products so that it can both (1) confirm that ingredients are at safe levels, and (2) disclose those levels to Plaintiff and the consuming public. Plaintiff also seeks restitution, damages (including punitive damages), and other compensatory relief.

## JURISDICTION

4.      **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of costs and interest, exceeds the sum of $5 million in the aggregate. In total, there are well over 100 members of the proposed Class that are known to exist, and this is a class action in which complete diversity exists between at least one Plaintiff and one Defendant – namely, that Plaintiff is a citizen of California, while Gerber is headquartered in, and therefore is a citizen of, Virginia.

5.      **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, Defendant conducts substantial business in this District and in the State of Virginia through its headquarters, sale of products, and website, and Plaintiff has suffered injury as a result of Defendant's acts in this District.

6.      **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

2

Venue also is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2) because Defendant is a resident of this District.

## PARTIES

7.      Plaintiff Susan Lawson is a citizen of the State of California and is a member of the Class as a purchaser of Defendant Gerber's Tainted Baby Foods. Plaintiff purchased the Tainted Baby Foods—specifically including but not limited to MultiGrain Cereal (Sitter 2nd Foods), turkey vegetable ravioli, yogurt melts, apple cinnamon puffs, probiotic oatmeal peach apple, and teethers strawberry apple spinach—at a Safeway store (and others) in California, and she relied on the Defendant's representations (and omissions) as described herein. Plaintiff purchased the Tainted Baby Foods in October 2020 and February 2021.

8.      Defendant Gerber Products Company is a Michigan corporation and maintains its headquarters in Arlington, Virginia. Defendant is a subsidiary of Nestlé S.A., a Swiss corporation.

9.      Plaintiff saw Defendant's nutritional and quality claims on the packaging, including the "Organics" and "Naturals" representations contained in the very name of the food as well as the stage representations, which she relied on in deciding to purchase the Tainted Baby Foods. During that time, based on Defendant's omissions and false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that the Tainted Baby Foods contained any level of heavy metals or toxins, and they would not have purchased the food if they had known the truth about the hazardous levels of heavy metals or toxins present in the "natural," "organic," and "non-GMO" baby foods that Defendant sold at a premium price.

10.     As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid for the Tainted Baby Foods that were not as represented. Plaintiff was injured in the amount of the purchase price of the Products because the Tainted Baby Foods containing dangerous ingredients were not the natural, organic, and safe foods she and so many other parents thought they were buying. Restitution of the purchase price is appropriate because even if the Tainted Baby Foods with dangerous ingredients had some value,

the Products with dangerous ingredients are different than the safe products Plaintiff believed she was buying.

11.     Plaintiff was further injured because the Tainted Baby Foods that she purchased have no or *de minimis* value—or a value that was at least less than what they paid for the Tainted Baby Foods—based on the presence of the alleged heavy metals and/or toxins. Plaintiff was also injured because she paid a premium price for the "organic," "natural," and "non-GMO" products that contained high quality ingredients that she reasonably assumed were safe for babies and children to ingest. Plaintiff would not have paid this money had she known that the Tainted Baby Foods contained dangerous levels of heavy metals and/or toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiff encounter the Gerber's baby foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Tainted Baby Foods.

12.     Defendant manufactures, markets, advertises, labels, distributes, and sells baby food products under the brand name Gerber throughout the United States, including in this District.

13.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Tainted Baby Foods under the baby food name Gerber throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Tainted Baby Foods, relied upon by Plaintiff were prepared, reviewed, and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Tainted Baby Foods were designed to encourage customers to purchase the Tainted Baby Foods, and they and reasonably misled reasonable consumers, including Plaintiff and the Class, into purchasing the Tainted Baby Foods. Defendant owns, manufactures, and distributes the Tainted Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Tainted Baby Foods. Defendant is responsible for sourcing ingredients, manufacturing the products, and

conducting all relevant quality assurance protocols, including testing, for the ingredients and finished baby food products.

## FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS

### I.     Defendant's False and Misleading Marketing of Its Baby Food

14.     None of the Tainted Baby Foods' packaging disclosed that they contained harmful levels of heavy metals and other ingredients. In other words, nowhere in the labeling, advertising, statements, warranties, or packaging does Defendant disclose that the Tainted Baby Foods contain or have a high risk of containing dangerous levels of heavy metals or other ingredients that do not conform to the labels, packaging, advertising, and statements.

15.     Instead, as shown in the examples below, Defendant's packaging and labels emphasize that Gerber baby food is natural, organic, with nothing artificial added. By making these assurances that the Tainted Baby Foods are natural and safe for infant consumption, Defendant warrants, promises, represents, misleads, labels, and advertises that the Tainted Baby Foods are free of any heavy metals or unnatural ingredients.

16.     Also as shown in the examples below, Defendant also warrants that the Tainted Baby Foods are safe for babies and infants by making representation about which stage of infant development the foods are appropriate for. Specifically, Defendant warrants that (1) "Supported Sitter" foods are appropriate for consumption by infants at "4-6 months"; (2) "Sitter" foods are appropriate for consumption by infants at "6-8 months"; (3) "Crawler" foods are appropriate for consumption by infants at "8+ months"; and (4) "Toddler" foods are appropriate for consumption by children at "12+ months."

### A.  Stage Representations Are Featured Prominently on Gerber's Website[2]

## Nutrition for your little one at every age and stage

     

| | | | | | |
|---|---|---|---|---|---|
| **Newborn** | Supported Sitter | Sitter | Crawler | Toddler | Preschooler |
| 0-4 months | 4-6 months | 6-8 months | 8-12 months | 12+ months | 24+ months |

2

5

**B.  *Gerber Rice Single Grain Cereal – Supported Sitter***



### C. Gerber 2nd Foods – Sitter



### D. Gerber Banana Puffs – Crawler



### E. Gerber Toddler Meals



17.    But contrary to Defendant's glaring omissions and misleading claims, the Tainted Baby Foods have been shown to contain worrying levels of arsenic, cadmium, lead, and/or mercury[3]—all known to pose health risks to humans and particularly infants.

---

[3] Healthy Babies Bright Futures, *What's In My Baby's Food?* (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf (hereinafter, "Healthy Babies Bright Futures Report").

## II.     Gerber Baby Foods Contain Harmful Heavy Metals

18.     Testing[4] has made clear that Gerber baby foods may contain heavy metals.

### A.  Healthy Babies Bright Futures Finds Heavy Metals in Gerber Baby Foods

19.     In April 2019, Healthy Babies Bright Futures, an alliance of nonprofit organizations, commissioned a national laboratory to test 168 containers of baby food for total recoverable arsenic, lead, cadmium, and mercury, as well as speciated arsenic for a subset of samples.

20.     Forty-eight of Gerber's baby food products were tested in this study.[5]

21.     Healthy Babies Bright Futures found that the samples contained heavy metals, including arsenic, lead, mercury, and cadmium.

22.     The researchers who published the Healthy Babies Bright Futures Report on healthybabyfood.org explained the harms these metals and can cause. They explained that arsenic, lead, mercury, and cadmium, four heavy metals found in the Baby Foods, are neurotoxins. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[6] The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[7] Even trace amounts of these

---

[4] *See id.*; *see also* SUBCOMMITTEE ON ECON. AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* (Feb. 4, 2021) at 2, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (hereinafter, "House Report").

[5] Healthy Babies Bright Futures Report at 19-28.

[6] *Id.* at 13.

[7] *Id.* at 6.

heavy metals can alter the developing brain and erode a child's IQ.[8] Arsenic causes potentially irreversible damage, including "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[9] According to the Healthy Babies Bright Futures Report, research continues to confirm that exposure to food containing arsenic, lead, mercury, and cadmium poses "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[10]

**B.    A Recent Congressional Report Also Finds Harmful Heavy Metals in Gerber Baby Foods**

23.    A recent congressional report from the Subcommittee on Economic and Consumer Policy of the House Oversight Committee found that Gerber baby foods "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, *which can endanger infant neurological development*."[11]

24.    The Subcommittee requested documentation from the largest baby food manufacturers in the United States, and the companies that responded (including Defendant) produced their internal testing policies, test results for ingredients/finished products (if the company tested its finished products), and documentation about what the companies did with the ingredients and/or finished products that exceeded their internal testing limits.[12]

25.    Defendant submitted to the Subcommittee its testing policies, select test results for some of its raw ingredients,[13] and its documentation about what it did with the ingredients that exceeded internal testing limits.

---

[8] *Id.* at 1.
[9] *Id.* at 13.
[10] *Id.*
[11] House Report at 2.
[12] *Id.*
[13] Gerber, *Raw Material Heavy Metal Testing* (Dec. 9, 2019), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/5_0.pdf.

26.     The Subcommittee concluded that Defendant used ingredients in its baby food that contained arsenic, lead, and cadmium.[14] The House Report also stated that "Gerber rarely tests for mercury in its baby foods." [15]

**C.     The Dangers of the Heavy Metals in Gerber Baby Foods Are Well-Documented**

27.     The findings by the Congressional Subcommittee and Happy Babies Bright Futures are particularly alarming because the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[16]

*i.     Arsenic*

28.     The Congressional Subcommittee found that Gerber Baby Foods may contain arsenic. The U.S Environmental Protection Agency and the FDA have documented the risks associated with exposure to arsenic and regulated its amount in water, juice, and in rice cereals for infants. Specifically, based on the risks associated with exposure to arsenic, the EPA and the FDA have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") in drinking water,[17] bottled water,[18] and apple juice[19] intended for human consumption. Defendant uses ingredients that far exceed these amounts.

29.     Gerber did not provide inorganic arsenic results for all of its ingredients, but the Congressional Subcommittee was troubled by the results produced. Test results demonstrated that Gerber used grape juice concentrate containing 39 ppb inorganic arsenic—far above the 10 ppb

---

[14] House Report at 3.
[15] *Id.*
[16] *Id.* at 2.
[17] 40 C.F.R. § 141.62.
[18] 21 C.F.R. § 165.110(b)(4)(iii)(A).
[19] U.S. FOOD & DRUG ADMIN., *Draft Guidance for Industry, Arsenic in Apple Juice: Action Level* (July 2013), https://www.fda.gov/media/86110/download.

limit for apple juice.[20] Further, the Subcommittee concluded that Gerber routinely used flour with over 90 ppb inorganic arsenic.[21] Gerber used five batches of rice flour that contained 98 ppb inorganic arsenic and 67 batches that contained more than 90 ppb.[22]

### ii.   *Lead*

28.    The Subcommittee also found that the Tainted Baby Foods may contain lead—a known neurotoxin and human carcinogen.

29.    Lead exposure can seriously harm children's nervous systems and developing brains and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[23]

30.    Because lead can accumulate in the body, even very low levels of exposure can become hazardous over time.[24] Indeed, "[n]o safe level of exposure has been identified."[25] Studies have demonstrated that childhood exposure to lead is strongly linked to an adverse effect on academic achievement.[26] One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food." A correlation has also been established between lead exposure and Attention Deficit Hyperactivity Disorder.[27] Troublingly, the cognitive effects caused by early childhood exposure to lead appear to be permanent.[28]

---

[20] House Report at 52.

[21] House Report at 19.

[22] *Id.*

[23] *Id.* at 11 (citing U.S. FOOD & DRUG ADMIN., *Lead in Food, Foodwares, and Dietary Supplements*, https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements (last visited Feb. 17, 2021)).

[24] *Id.*

[25] Healthy Babies Bright Futures Report at 13.

[26] House Report at 11.

[27] *Id.* at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review*, INT'L J. ENVTL. RES. & PUB. HEALTH (Jan. 29, 2019), www.mdpi.com/1660-4601/16/3/382/htm).

[28] *Id.* at 11.

31.     Although there is no federal standard for lead in baby food, experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, agree that lead in baby foods should not exceed 1 ppb.[29] The FDA has set the maximum lead level in bottled water to 5 ppb.[30]

32.     The Subcommittee found that Gerber's test results for sweet potatoes and juices "demonstrated [Defendant's] willingness to use ingredients that contained dangerous lead levels." One of Gerber's ingredients, conventional sweet potatoes, contained 48 ppb lead. Gerber also used twelve other batches of sweet potato that tested over 20 ppb for lead.[31]

33.     The Subcommittee also concluded that the average amount of lead in Gerber's tested juice concentrates was 11.2 ppb—greater than the FDA's limit of 5 ppb lead in bottled water. Further, the Subcommittee found that "[o]ver 83% of the juice concentrates tested showed greater than 1 ppb lead, which is Consumer Reports' recommended limit for fruit juices."[32]

34.     Defendant only tested its component ingredients for lead, instead of also testing its finished products. As a result, Defendant sold baby food products containing significant amounts of lead.[33] As a result, Defendant sold baby food products containing significant amounts of lead.[34] The Healthy Babies Bright Futures report indicated that three of the Baby Foods contained more than 20 ppb lead.[35]

---

[29] House Report at 27.
[30] Healthy Babies Bright Futures Report at 16.
[31] House Report at 27.
[32] *Id.* at 28.
[33] *Id.* at 22.
[34] *Id.*
[35] Healthy Babies Bright Futures Report at 19-28.

### iii.    *Mercury*

35.     The Tainted Baby Foods also may contain mercury,[36] which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[37]

36.     Recognizing the harm caused by ingestion of mercury, EPA has set the maximum mercury level in drinking water to 2 ppb.[38]

37.     The Subcommittee found that Gerber only tests certain ingredients for mercury and noted that the only test results for mercury that Gerber submitted were for carrots, sweet potatoes, and lemon juice concentrate.[39]

### iv.    *Cadmium*

38.     The Tainted Baby Foods may also contain cadmium,[40] which has been observed to cause anemia, liver disease, and nerve or brain damage in animals that consume it.

39.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.[41] Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[42] Cadmium also "displays a troubling ability to cause harm at low levels of exposure."[43] The U.S. Department

---

[36] *See* House Report at 35 (noting that "Gerber barely tests" its ingredients or finished products for mercury); *see also* Healthy Babies Bright Futures Report at 19-28 (independent test results showing that Gerber products contain mercury).
[37] Healthy Babies Bright Futures Report at 14.
[38] 40 C.F.R. § 141.62(b).
[39] House Report at 33.
[40] *Id.* at 32.
[41] Healthy Babies Bright Futures Report at 14.
[42] *Id.*
[43] *Id.*

of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[44]

40.     The EPA and FDA have set the standards for the allowable limit of cadmium in drinking water[45] and bottled water[46] at 5 ppb. The WHO has established a maximum amount of cadmium in drinking water at 3 ppb.[47]

41.     The Subcommittee concluded that Gerber "accepts ingredients with high levels of cadmium[,]" finding that Gerber used multiple batches of carrots containing as much as 87 ppb cadmium, and that 75% of the carrots Gerber used had more than 5 ppb cadmium.[48]

42.     Despite the known risks of exposure to these heavy metals, Gerber has negligently, recklessly, and/or knowingly sold the Tainted Baby Foods without disclosing that they may contain arsenic, mercury, cadmium, and lead to consumers like Plaintiff.

43.     Given the well documented dangers of the heavy metals that may be in the Tainted Baby Foods, reasonable consumers, like Plaintiff, would consider the mere presence or risk of heavy metals as a material fact in considering what baby food products to purchase.

44.     Defendant claims on its website that it "meet[s] the standards of the FDA, but we don't stop there. We go further. We have among the strictest standards in the world. From farm to

---

[44] ATSDR, DEP'T OF HEALTH AND HUMAN SERV., *Public Health Statement: Cadmium* (Sept. 2012), https://www.atsdr.cdc.gov/toxprofiles/tp5-c1-b.pdf.
[45] 40 C.F.R. § 141.62(b).
[46] 21 C.F.R. § 165.110(b)(4)(iii)(A).
[47] WORLD HEALTH ORGANIZATION, *Cadmium in Drinking Water* (2011), https://www.who.int/water_sanitation_health/water-quality/guidelines/chemicals/cadmium.pdf?ua=1.
[48] House Report at 32.

highchair, we go through over 100 quality checks for every jar."[49] As such, Defendant knew or should have known that the Baby Foods contained or had a risk of containing dangerous levels of heavy metals. Additionally, Defendant knew or should have known that its ingredients, and the final products, could contain materials such as toxins and heavy metals. Yet, Defendant did not test all ingredients and products, including the Tainted Baby Foods, for such materials.[50]

45.     Additionally, Defendant knew or should have known that Plaintiff and other consumers would feed the Tainted Baby Food multiple times each day to their children, making these contaminated products the primary sources of food for their children. This necessarily leads to repeated exposure of heavy metals to children.

46.     Defendant knew or should have expected that the presence or risk of heavy metals in its baby food products is a fact that an average consider would consider when purchasing baby food.

47.     As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Tainted Baby Foods.

48.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers who purchased the Tainted Baby Foods, in order to cause the disclosure of the presence or risk of heavy metals that pose a known risk to infants in the Tainted Baby Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Tainted

---

[49] *Commitment to Quality*, https://www.gerber.com/commitment-to-quality (last visited Mar. 3, 2021).

[50] *Letter from the Chief Executive Officer of Gerber Products Company to Chairman Raja Krishnamoorthi*, SUBCOMMITTEE ON ECON. AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM (Dec. 19, 2019),
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/7_Redacted.pdf (Gerber's policy is to "regularly test our ingredients, and periodically test . . . finished goods").

Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Tainted Baby Foods.

## **CLASS ACTION ALLEGATIONS**

49.     Plaintiff brings this action individually and on behalf of the following proposed Classes pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> **National Class.** All persons within the United States who purchased one or more of the Tainted Baby Foods from the beginning of the applicable statutory period through present (the "National Class").

> **Multistate Class.** All persons within the States of California, Florida, Illinois, New York, North Carolina, Ohio, and Washington who purchased one or more of the Tainted Baby Foods from the beginning of the applicable statutory period through present (the "Multistate Class").

> **California Class.** All persons within the State of California who purchased one or more of the Tainted Baby Foods from the beginning of the applicable statutory period through present (the "California Class").

50.     Unless otherwise stated, use of the term "Class" throughout this Complaint refers to the National Class, the Multistate Class, and the California Class, collectively.

51.     Excluded from the Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all government entities, and any judge, justice, or judicial officer presiding over this matter.

52.     This action is brought and may be properly maintained as a class action.

53.     The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the proposed Classes in a single action will provide substantial benefits to the parties and Court.

54.     Questions of law and fact common to Plaintiff and members of the Classes include, but are not limited to, the following:

A. Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods are healthy, nutritious, and safe for human consumption;

B. Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods are natural;

C. Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods are organic;

D. Whether Defendant wrongfully represented and continues to represent that the Tainted Baby Foods appropriate are appropriate for consumption by various "stages" of babies;

E. Whether Defendant wrongfully failed to disclose that the Tainted Baby Foods contained or may contain heavy metals;

F. Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

G. Whether those representations are likely to deceive a reasonable consumer;

H. Whether a reasonable consumer would consider the presence or risk of heavy metals as a material fact in purchasing baby food;

I. Whether Defendant had knowledge that those representations were false, deceptive, and misleading;

J. Whether Defendant knew or should have known that the Tainted Baby Foods contained or may contain heavy metals;

K. Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

18

L.  Whether a representation that a product is healthy, superior quality, nutritious, and safe for consumption and does not contain arsenic, mercury, cadmium, and/or lead is material to a reasonable consumer;

M. Whether Defendant's representations and descriptions on the labeling of the Tainted Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

N.  Whether Defendant violated the laws of the State of California;

O.  Whether Defendant violated the laws of the State of Florida;

P.  Whether Defendant violated the laws of the State of Illinois;

Q.  Whether Defendant violated the laws of the State of New York;

R.  Whether Defendant violated the laws of the State of North Carolina;

S.  Whether Defendant violated the laws of the State of Ohio;

T.  Whether Defendant violated the laws of the State of Washington;

U.  Whether Defendant breached its implied warranties;

V.  Whether Defendant engaged in unfair trade practices;

W.  Whether Defendant engaged in false advertising;

X.  Whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

Y.  Whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

Z.  Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

55.     Common issues predominate here where Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations, business practices, and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

56.     Plaintiff's claims are typical of those of the members of the Class, since all of the claims are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

57.     Plaintiff will fairly and adequately represent and protect the interests of the Class, she has no interests incompatible with the interests of the Class, and she has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

58.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is sufficiently small such that, absent representative litigation, it would be impractical for members of the Class to redress the wrongs done to them.

59.     As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Express Warranty Against Defendant
### on Behalf of Plaintiff and the National Class

60.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

61.     Plaintiff brings this claim on behalf of herself and on behalf of the National Class (referred to throughout this Count as "the Class").

62.     Defendant marketed and sold the Baby Foods into the stream of commerce with the intend that the Tainted Baby Foods would be purchased by Plaintiff and the Class.

63.     Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that its baby foods are:

        A.  Natural;

        B.  Organic;

        C.  Non-GMO; and

        D.  Appropriate for consumption by certain stages of babies.

64.     Defendant made these express warranties regarding the Tainted Baby Foods' quality, ingredients, and fitness for consumption in writing on the Tainted Baby Foods' packaging and labels through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Tainted Baby Foods.

65.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Tainted Baby Food to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Tainted Baby Foods in deciding whether to purchase Defendant's products.

66.     Defendant's baby foods do not conform to Defendant's advertisements, warranties, and representations in that they:

        A.  Are not natural or suitable for consumption by human babies; and

        B.  Contain or may contain levels of various heavy metals.

67.     Defendant was on notice of this breach as they were aware of the included heavy metals in the Tainted Baby Foods and based on the public investigation by the Healthy Babies

21

Bright Futures report that showed its baby food products as unhealthy and containing dangerous levels of heavy metals.

68.     Privity exists because Defendant expressly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Tainted Baby Foods were healthy, natural, and suitable for consumption and by failing to make any mention of heavy metals or other unnatural ingredients.

69.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Tainted Baby Foods that were not only worth less than the price they paid, but they would not have purchased at all had, they known of the risk and/or presence of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

70.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
### Breach of Implied Warranty of Merchantability Against Defendant on Behalf of Plaintiff and the National Class

71.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

72.     Plaintiff brings this claim on behalf of herself and on behalf of the National Class (referred to throughout this Count as "the Class").

73.     Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

74.     There was a sale of goods from Defendant from Plaintiff and the Class.

75.     At all times mentioned herein, Defendant manufactured or supplied the Tainted Baby Foods, and prior to the time the Tainted Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Tainted Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Tainted Baby Foods' containers and labels, including that the food was natural, safe, and appropriate for consumption by human infants. Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Tainted Baby Foods.

76.     The Tainted Baby Foods were not fit for their ordinary use (consumption by babies) and did not conform to Defendant's affirmations of fact and promises as they contained or were at risk of containing heavy metals and/or other ingredients or contaminants that do not conform to the packaging.

77.     Defendant breached its implied warranties by selling Tainted Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

78.     Defendant was on notice of this breach, as it was aware of the heavy metals included or at risk of being included in the Tainted Baby Foods and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby foods were unhealthy, contaminated, and potentially dangerous, as well as the extensive press coverage of the investigation.

79.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Tainted Baby

23

Foods were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals or other unnatural ingredients.

80.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased baby food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients.

81.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**COUNT III**
**Fraudulent Misrepresentation Against Defendant**
**on Behalf of Plaintiff and the National Class or Alternatively the California Class**

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

83.    Plaintiff brings this claim on behalf of herself and on behalf of the National Class (referred to throughout this Count as "the Class").

84.    Defendant falsely represented to Plaintiff and the Class that the Tainted Baby Foods are:

A.  Natural;

B.  Organic;

C.  Non-GMO; and

D.  Appropriate for consumption by certain stages of babies.

85.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its baby foods.

86.     Defendant knew that its representations about the Tainted Baby Foods were false in that the Tainted Baby Foods contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, including Plaintiff and the Class.

87.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Tainted Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Tainted Baby Foods, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

88.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Tainted Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

89.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT IV
### Fraudulent Concealment
### on Behalf of Plaintiff and the National Class or Alternatively the California Class

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     Plaintiff brings this claim on behalf of herself and on behalf of the National Class (referred to throughout this Count as "the Class").

25

92.     Defendant concealed from and failed to disclose to Plaintiff and the Class that the Tainted Baby Foods contained or were at risk of containing heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

93.     Defendant had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability, and risks of the Tainted Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Tainted Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could not have reasonably have been expected to learn or discover that the Tainted Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Tainted Baby Foods.

94.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Tainted Baby Foods.

95.     Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Tainted Baby Foods, which is inferior in comparison to Defendant's advertisements and representations of the Tainted Baby Foods.

96.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Tainted Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals and toxins.

97.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT V
## Negligent Misrepresentation
## on Behalf of Plaintiff and the National Class or Alternatively the California Class

98.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

99.     Plaintiff brings this claim on behalf of herself and on behalf of the National Class (referred to throughout this Count as "the Class").

100.    Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Tainted Baby Foods.

101.    Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Tainted Baby Foods from the marketplace or to take other appropriate remedial action.

102.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Tainted Baby Foods were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Tainted Baby Foods were not natural, organic, nutritious, healthy, or safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conforming to the packaging; (2) the Tainted Baby Foods were adulterated or at risk of being

27

adulterated by heavy metals; and (3) the Tainted Baby Foods were otherwise not as warranted and represented by Defendant.

103.    Plaintiff and the Class justifiably and reasonably relied on Defendant's representations as to the ingredients, qualities, and characteristics of the Tainted Baby Foods.

104.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Tainted Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

105.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VI**
**Unjust Enrichment**
**on Behalf of Plaintiff and the National Class or Alternatively the California Class**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Plaintiff brings this claim on behalf of herself and on behalf of the National Class (referred to throughout this Count as "the Class").

108.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through their purchase of the Tainted Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

109.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Tainted Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented

and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under the circumstances.

110.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits and not return the value of payments made by Plaintiff and the Class.

111.    Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

112.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT VII**
**Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*,**
**on Behalf of Plaintiff and the California Class**

29.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

30.    Plaintiff brings this claim on behalf of herself and on behalf of the California Class (referred to throughout this Count as "the Class").

31.    Defendant's conduct constitutes violations under the California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA").

32.    Defendant's conduct falls within the meaning of this statute because it caused transactions to occur resulting in the sale or lease of goods or services to consumers – namely, the sale of the Tainted Baby Foods. Baby food is considered to be "goods" within the meaning of the statute under Civil Code 1761(a) and Defendant's sale of baby food is considered a service under Civil Code 1761(b).

33.    Plaintiff and members of the Class are consumers pursuant to the statute.

34.     Defendant violated the CLRA by way of the following provisions:

35.     Passing off the Tainted Baby Foods as that of another, specifically indicating the Products are safe for young children when in fact they are not in violation of Civ. Code § 1770(a)(1);

36.     Representing that the Tainted Baby Foods have "characteristics" which they do not have in violation of Cal. Civ. Code § 1770(a)(5);

37.     Representing that the Tainted Baby Foods are of a "particular standard, quality, or grade" when they were not in violation of Cal. Civ. Code § 1770(a)(7);

38.     Advertising the Tainted Baby Foods be safe for young children with the "intent not to sell them as advertised" in violation of Cal. Civ. Code § 1770(a)(9); and

39.     Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not in violation of Cal. Civ. Code § 1770(a)(16).

40.     Defendant is aware that its representations are false and misleading.

41.     Due to Defendant's conduct, Plaintiff and members of the Class suffered ascertainable economic injury.

42.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff has provided notice to Defendant of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it the opportunity to correct its business practices. If Defendant does not do so, Plaintiff will seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act. Plaintiff Lawson's notice was sent via certified mail, return receipt requested, on May 26, 2021.

43.     Accordingly, Plaintiff and the Class seek injunctive relief, reasonable attorneys' fees and costs, and all other available relief as pled in this Complaint. Plaintiff will seek to amend this Complaint at the appropriate time to assert claims for damages.

**COUNT VIII**
**Violation of California's Unfair Competition Law,**
**Cal. Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**on Behalf of Plaintiff and the California Class**

44.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

45.     Plaintiff brings this claim on behalf of herself and the California Class (referred to throughout this Count as "the Class").

46.     Defendant's conduct constitutes unfair business acts or practices under the California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL").

47.     Defendant's business practices are considered to be "unfair" because it violates California's Unfair Competition Law, which states that unfair acts are acts where the reasons, justifications and motivations of Defendant are outweighed by the harm to Plaintiff.

48.     A business practice is also considered to be "unfair" if the conduct alleged is immoral, unethical, oppressive, or substantially injurious to consumers; as well as if the conduct alleged causes an injury which is not outweighed by any benefits to other consumers or to competition, and that the injury is of the type that the consumer could not have avoided. Defendant's conduct is "unfair" pursuant to the UCL under each of the three tests described in these paragraphs.

49.     Defendant's behavior constitutes unfair business practices under California law.

50.     Defendant's retention of Plaintiff's and Class members' payments for the Tainted Baby Foods with the issues as described herein, namely, that the Tainted Baby Foods are not

wholesome as advertised, are not organic (where applicable), and are not fit for consumption by young children, does not outweigh the economic harm that said retention imposes on consumers. The only party that benefits is Defendant. Defendant's sale of the Products with the misrepresentations discussed herein are immoral, unethical, oppressive, and substantially injures consumers.

51.     Plaintiff and members of the Class had no way of knowing that Defendant's Products contained harmful heavy metals. And, as Defendant continues to unfairly retain Plaintiff's and members of the Class' payments for the Products, this conduct continues to be unfair under California law. This is exactly the type of unscrupulous and inexcusable business practice that the UCL was enacted to address.

52.     As a result of Defendant's conduct, Plaintiff and Class members have suffered injury-in-fact by way of lost assets. Plaintiff requests that the Court issue sufficient equitable relief to restore her and Class members to the position they would have been had Defendant not engaged in unfair business practices. Plaintiff seeks all other available relief as pled in this Complaint.

**COUNT IX**
**Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500**
**on Behalf of Plaintiff and the California**

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

54.     Plaintiff brings this claim on behalf of herself and the California Class (referred to throughout this Count as "the Class").

32

55.     Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §
17500 ("FAL"), by publicly disseminating misleading and false advertisements through
advertising and marketing statements, suggesting that consumers purchase the Products at-issue:

56.     Natural;

57.     Organic;

58.     Non-GMO; and

59.     Appropriate for consumption by certain stages of babies.

60.     Defendant's contribution to the false and misleading advertisements were made in
order to prop up and increase sales of the Tainted Baby Foods.

61.     Defendant knew these false and misleading advertisements were untrue.

62.     Plaintiff and members of the proposed Class would not have bought these
products had they known that any or all of these misrepresentations were false.

63.     Pursuant to California Business & Professions Code § 17500, Plaintiff and the
Class seek an order of this Court permanently enjoining Defendant from continuing to publicly
disseminate misleading and false advertisements as alleged herein. Plaintiff and the Class also
seek an order requiring Defendant to: (a) make full restitution for all monies wrongfully
obtained; and (b) disgorge all ill-gotten revenues and/or profits. Plaintiff seeks all other available
relief as pled in this Complaint.

## COUNT X
### Violations of Various State Consumer Protection Acts
### on Behalf of Plaintiff and the Multistate Class

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     Plaintiff brings this claim for deceptive acts and practices in violation of various states' consumer protection statutes individually, as to her respective states' laws, and on behalf of the Multistate Class, as to the laws of the other states (referred to throughout this count as "the Class").

66.     Defendant has engaged in deceptive, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiff and the Class, as described herein, including the knowing and intentional misrepresentations and omissions described with respect to the marketing, advertising, promotion, packaging, labeling, and sale of the Products.

67.     Defendant's deceptive, unfair, unconscionable, and fraudulent acts and practices have been carried out in the course of conducting Defendant's business, trade, and commerce.

68.     Such acts and practices—including Defendant's intentional efforts to mislead consumers by the misrepresentations and omissions alleged throughout this Complaint—are willful, unfair, unconscionable, deceptive, immoral, unethical, oppressive, unscrupulous, contrary to public policy, and substantially injurious to consumers, including Plaintiff and the Class.

69.     Such acts and practices, including Defendant's misrepresentations and omissions, have the capacity to mislead, deceive, and confuse a substantial portion of the public and all reasonable consumers in a material way and have in fact misled, deceived, and confused Plaintiff and the Class in a material way, as Defendant intended.

34

70.     Defendant's intentionally false, deceptive, misleading, and confusing representations and omissions would be material to any ordinary, average, and reasonable consumer's decision whether to buy the Tainted Baby Foods, given that they pertain to a fundamental and important feature of the Products. No reasonable consumer would have purchased the Products but for Defendant's acts and practices, including its misrepresentations and omissions, described throughout this Complaint.

71.     Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including the misrepresentations and omissions described herein.

72.     Defendant's acts are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being and are motivated solely by the desire for financial gain.

73.     As a direct and proximate result of Defendant's deceptive practices, Plaintiff and the Class have sustained actual damages including but not limited any price premium paid and other damages alleged in this Complaint.

74.     Plaintiff's claims under the laws of California are representative of similar claims available to Multistate Class members under the laws of other states, which are consonant with one another and with the laws of California.

75.     Defendant's acts and practices described herein constitute unfair competition and deceptive, unfair, unconscionable, and fraudulent acts and practices in violation the following state consumer protection statutes:

> a.   California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §§ 1750, *et seq.*), California's Unfair Competition Law ("UCL") (Bus. & Prof. Code §§ 17200

*et seq.*), and California's False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*);

b.   Florida Deceptive and Unfair Trade Practices Act (§§ 501.201, Fla. Stat., *et seq.*);

c.   Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*);

d.   New York Deceptive Acts and Practices Act (N.Y. Gen. Bus. Law §§ 349, *et seq.*) and New York False Advertising Law (N.Y. Gen. Bus. Law §§ 350, *et seq.*);

e.   North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1, *et seq.*);

f.   Ohio Consumer Sales Practices Act (ORC §§ 4165.01, *et seq.*) and Ohio Deceptive Trade Practices Act (ORC §§ 4165.01, *et seq.*); and

g.   Washington Consumer Protection Act (Wash. Rev. Code §§ 19.86.010, *et seq.*).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.   An order enjoining Defendant from selling the Tainted Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.   An order enjoining Defendant from selling the Tainted Baby Foods in any manner or suggestion implying that they are healthy, natural, and safe for consumption;

D.      An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from containing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  June 28, 2021

By:   /s/ Kristi C. Kelly
Kristi C. Kelly, VSB No. 72791
Casey S. Nash, VSB No. 84261
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7570
kkelly@kellyguzzo.com
casey@kellyguzzo.com

Glenn E. Chappell*
Hassan A. Zavareei*
Allison W. Parr*
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
jtycko@tzlegal.com
hzavareei@tzlegal.com
aparr@tzlegal.com

Annick M. Persinger*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

Melissa S. Weiner*
**PEARSON, SIMON & WARSHAW, LLP**
800 LaSalle Avenue, Suite 2150
Minneapolis, Minnesota 55402
Telephone: (612) 389-0600
mweiner@pswlaw.com

Rachel Soffin*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: 865-247-0080
Facsimile: 865-522-0049
rsoffin@milberg.com

38

*Counsel for Plaintiff and the Putative Class*

\* *Pro Hac Vice* Forthcoming